# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CA-00505-COA

YVONNE MARLENE WEIRICH AND KAREN
DEBORAH MURCHISON

APPELLANTS

v.

GARY DAVID MURCHISON AND DENNIS
RAYMOND MURCHISON

APPELLEES

DATE OF JUDGMENT: 11/14/2014
TRIAL JUDGE: HON. DEBORAH J. GAMBRELL
COURT FROM WHICH APPEALED: LAMAR COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANTS: CHRISTOPHER M. HOWDESHELL
ATTORNEYS FOR APPELLEES: LAWRENCE CARY GUNN JR.
DENNIS RAYMOND MURCHISON (PRO
SE)
NATURE OF THE CASE: CIVIL - WILLS, TRUSTS, AND ESTATES
TRIAL COURT DISPOSITION: FOUND DEEDS VALID
DISPOSITION: AFFIRMED - 09/06/2016
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE ISHEE, P.J., CARLTON AND JAMES, JJ.**

**JAMES, J., FOR THE COURT:**

¶1. The daughters of the grantor brought an action to set aside deeds conveying property

to all of the grantor's children on the grounds of undue influence. The chancery court

determined that no undue influence was exerted and found the deeds to be valid. For the

reasons discussed below, we affirm the decision of the chancery court. Because this issue

is dispositive, there is no need to address the second issue on appeal.

## FACTS

¶2. Clarence Murchison had a history of transischemic attacks (TIA) dating back to 1988.

Gary Murchison, Clarence's son, began helping his father with his financial and business affairs after Clarence had a stroke in 2010. This consisted of helping Clarence pay bills, driving him on errands, and taking him to doctors' appointments. According to Yvonne Weirich, Clarence's daughter, after the 2010 stroke, Clarence was unable to make complex decisions.

¶3. In 2011, Gary and Clarence set up two joint accounts at Hancock Bank and Trustmark Bank where all of Clarence's retirement income would be deposited. Clarence also executed a will on March 2, 2011, in which he left all of his real property to his wife. In the case of her death, all of the real property Clarence owned would be left to his four children equally. On that same day, Clarence executed a general durable power of attorney and power of attorney for health appointing Gary as his agent. Shortly after the execution of the will and powers of attorney, Clarence had another TIA. After this attack, Clarence was diagnosed with dementia and began taken medication for that illness.

¶4. Clarence's wife died on July 26, 2011. Shortly after her death, Clarence, with Gary and Yvonne's assistance, purchased a home close to Gary called the Anchor Lake House. Clarence, however, never lived in the house and moved in with Gary instead. Gary drove Clarence to town to take care of his property and took him to Slidell to shop for tools and other items. According to Gary, Clarence had another TIA in November 2011, and that was followed up with therapy. While Clarence continued to do most of his activities, there were signs that the last TIA had extreme side effects. Clarence had another TIA on November 13, 2012, and was hospitalized for two days, then underwent a course of physical therapy. After

this attack, Clarence could still walk on his own with a walker but would scissor his feet and had trouble getting his words out.

¶5.    Yvonne testified that despite her living out of state she had a close relationship with her father and she talked to him on a regular basis. Clarence even went to Texas on November 2, 2012, to visit Yvonne and hunt. Yvonne got a hunting license for her father, and Gary took him deer hunting.

¶6.    On November 13, 2012, Clarence had a stroke. Clarence began in-hospital physical therapy on November 15, 2012, and was discharged on December 6, 2012. Clarence continued physical therapy after his discharge. On December 18, 2012, Gary took Clarence to Attorney Claiborne McDonald's office. Dennis Murchison, Clarence's youngest son, met them at the attorney's office. Attorney McDonald had both Gary and Dennis leave the office so he could speak with Clarence alone. After Attorney McDonald spoke with Clarence, Clarence and Gary went back home. On December 19, 2012, Clarence and his two sons went back to Attorney McDonald's office. Attorney McDonald again spoke with Clarence on the day he executed the deeds, and this conversation occurred outside the presence of Gary and Dennis. Attorney McDonald testified that he wanted to be sure that Clarence was oriented and knew what he was doing. According to McDonald, Clarence signed the new deeds. Although his handwriting was poor, Clarence was well aware of what he was doing.

¶7.    Clarence owned five parcels of property in the counties of Walthall, Pearl River, and Lamar.[1] Clarence conveyed 38 acres of land in Lamar County to Karen Murchison, 40 acres

---

[1] The Lamar County parcel, conveyed to Karen, has two deeds. The property consists of two neighboring parcels.

3

of land in Pearl River County to Yvonne, 100 acres of land in Walthall County to Gary, and the house located in Pearl River County to Dennis. Clarence suffered another stroke on December 29, 2012, and never regained consciousness. He died on January 14, 2013.

## PROCEDURAL HISTORY

¶8. On June 27, 2013, Karen and Yvonne filed a complaint in the Chancery Court of Lamar County, Mississippi, requesting the court to declare the five deeds void. They also requested that the property be sold and the proceeds be divided equally among each grantee. A hearing on this matter was held on October 7, 2014. At the hearing, the trial judge heard testimony from all four children, Alice Sandifer, and Attorney McDonald. Sandifer was the branch manager at Trustmark Bank in Tylertown, Mississippi, where Clarence did his banking. After the hearing, the chancellor upheld the deeds, finding that Yvonne and Karen failed to show that the conveyances were the product of undue influence.

## STANDARD OF REVIEW

¶9. This Court will not disturb a chancery court's findings of fact when there is substantial evidence in the record to support the court's findings, unless the findings are clearly erroneous or manifestly wrong, or the chancery court abused its discretion. *In re Estate of Lane*, 930 So. 2d 421, 424 (¶9) (Miss. Ct. App. 2005).

## DISCUSSION

I. **Whether the chancery court erred in finding that Gary and Dennis presented sufficient evidence that they did not unduly influence their father to execute the deeds.**

¶10. Yvonne and Karen argue that the chancellor erred in finding that there was substantial

4

evidence presented to rebut any presumption of undue influence. When a confidential

relationship is shown to have existed between the grantor and the grantee at the time of the

conveyance, the court will scrutinize the conveyance. *In re Estate of Summerlin*, 989 So. 2d

466, 477 (¶38) (Miss. Ct. App. 2008). Determining whether the conveyance is valid is a two-

step process. According to our law,

> A confidential relationship arises whenever there is a relationship between two
> people in which one person is in a position to exercise dominant influence
> upon the other because of the latter's dependency on the former arising either
> from weakness of mind or body, or through trust[.] The burden of establishing
> the existence of a fiduciary relationship is upon the party asserting it. Where
> a confidential relationship exists, there is a presumption of undue influence
> concerning an inter vivos gift.

*Id*. (internal quotation marks and citations omitted). This Court considers seven factors in

evaluating whether a confidential relationship exists between two parties. Those factors are:

> (1) whether one person has to be taken care of by others, (2) whether one
> person maintains a close relationship with another, (3) whether one person is
> provided transportation and has [his] medical care provided for by another, (4)
> whether one person maintains joint accounts with another, (5) whether one is
> physically or mentally weak, (6) whether one is of advanced age or poor
> health, and (7) whether there exists a power of attorney between the one and
> another.

*Id*. at 477 (¶39).

¶11.   If a confidential relationship exists between the grantor and the grantee, the grantee

must overcome the presumption of undue influence by clear and convincing evidence. *In re*

*Estate of Lane* at (¶22). To overcome the presumption of undue influence, the grantee must

show: (1) good faith on the part of the grantee; (2) the grantor's full knowledge and

deliberation of his actions and their consequences; and (3) independent consent and action

5

by the grantor. *In re Estate of Hart*, 20 So. 3d 748, 753 (¶12) (Miss. Ct. App. 2009).

¶12. There is ample evidence here to support the chancellor's finding that a confidential relationship existed between Gary and Clarence. Clarence lived in Gary's home and was taken care of by him and his wife. Gary provided the transportation for shopping, errands, and doctors' appointments. Gary was also the attorney-in-fact for Clarence under two powers of attorney and maintained joint accounts with Clarence. Thus, all of the evidence in this case favors a finding that a confidential relationship existed between Gary and Clarence.

### A.    Good Faith

¶13. We consider five factors when determining whether the grantee acted in good faith:

> (a) the determination of the identity of the initiating party in seeking preparation of the instrument, (b) the place of the execution of the instrument and in whose presence, (c) what consideration and fee were paid, if any, and (d) by whom paid, and (e) the secrecy or openness given the execution of an instrument.

*Id*. at 753 (¶14). There was conflicting evidence regarding whether Gary acted in good faith. The record indicates that Gary did play a roll in the preparation of the deeds. He contacted the attorney, drove Clarence to the attorney's office, and signed Clarence's check for payment of the transaction. The record shows that Gary always drove Clarence to his appointments. Moreover, Gary and Dennis remained in the reception area each time Attorney McDonald spoke with Clarence about dividing his property. The record also shows that Gary often filled out Clarence's checks. According to Attorney McDonald, while Clarence did sign each deed, it was "progressively more difficult for him to control his hand

6

as he signed each [one]." Gary testified that Clarence gave him the checkbook in the office and he wrote the check and signed it for his father. On the other hand, Yvonne's testimony indicated that Gary had not acted in good faith. She testified that Gary told her he would not take Clarence to the attorney's office during their phone conversation on December 19, 2012.

¶14. We are mindful that the chancellor, in matters such as this, sits as the finder of fact. *Ferguson v. Ferguson*, 782 So. 2d 181, 184 (¶10) (Miss. Ct. App. 2001). Our Court will not replace the chancellor's opinion with our own when determining the weight of credible evidence. The chancellor heard this testimony and observed the demeanor of the witnesses firsthand and was best able to assess their credibility. *Id*. The record contains sufficient credible evidence from which the chancellor could and did conclude that Gary acted in good faith.

## B. Full Knowledge and Deliberation

¶15. The second prong to consider is whether Clarence had full knowledge of his actions and their consequences. We use the following factors in that determination:

> (a) [his] awareness of [his] total assets and their general value, (b) an understanding by [him] of the persons who would be the natural inheritors of [his] bounty under the laws of descent and distribution or under a prior will and the how the proposed change would legally affect that prior will or natural distribution, (c) whether non-relative beneficiaries would be excluded or included[,] and[] (d) knowledge of who controls [his] finances and business and by what method, and if controlled by another, how dependent is the grantor/testator on [him] and how susceptible to [his] influence.

*In re Estate of Hart*, 20 So. 3d at 755 (¶18).

¶16. The record indicates that Clarence had full knowledge of his assets, his natural inheritors, and who controlled his finances. Gary testified that he would often write checks

for Clarence but Clarence always signed them. Furthermore, testimony from Alice Sandifer suggested that Clarence controlled his own finances. Sandifer testified that she had worked personally with Clarence for seven or eight years and he had dealt exclusively with her for his banking needs. She testified that Clarence continued to see her after his wife passed. Sandifer recalled that Gary came to the bank with Clarence after his wife passed, but Clarence still conducted his own banking.

### C. Independent Consent

¶17. The last prong is whether Clarence exhibited independent consent and action. We look to three factors to determine whether Clarence exhibited independent consent and action: "advice of (a) competent person, (b) disconnected from the grantee, and (c) devoted wholly to the grantor/testator's interest." *Id*. at 756 (¶22).

¶18. Gary testified that his father began discussing his wishes on the division of his property during the summer of 2012. Gary said Clarence intended for him to receive the land in Walthall County since Gary once owned half of it. According to the record, Gary deeded his half of the interest in the land to his parents in 2001 so they could claim a homestead exemption.

¶19. On December 18, 2012, Gary took Clarence to Attorney McDonald's office to discuss the division of the property. Initially, Attorney McDonald met with Gary, Clarence, and Dennis. Attorney McDonald then asked Gary and Dennis to leave the room and spoke to Clarence alone about the deeds. Attorney McDonald testified that it was his understanding that Clarence wanted to deed properties to his children and indicated which deed should go

8

to which child.

¶20. Gary took Clarence back to Attorney McDonald's office the next day, and McDonald spoke with Clarence alone. Attorney McDonald asked Clarence certain questions to determine if he was oriented to persons, places, and time. Attorney McDonald then asked Clarence if he was sure about his division of the property. After receiving affirmation, Attorney McDonald went over each deed. Attorney McDonald read the deeds to Clarence, and Clarence signed the deeds. Attorney McDonald noticed that it became more difficult for Clarence to sign as they went over each deed but Clarence seemed to understand what was being read to him. Gary testified that after the deeds were executed, his father gave him the checkbook to pay Attorney McDonald. Gary wrote and signed the check.

¶21. The record supports the chancellor's finding that Gary overcame the presumption of undue influence by clear and convincing evidence. Therefore, we find that this issue is without merit.

    **II.    Whether the trial court erred in finding that the parties reached a settlement, which acts a bar to this case**.

¶22. Because the decision on the first issue is dispositive, there is no need to address this second issue.

## CONCLUSION

¶23. The chancellor considered each of the three factors in deciding that Gary had proven by clear and convincing evidence that the presumption of undue influence was overcome. We find that the chancellor's conclusion was supported by the record. For this reason, the chancery court's judgment is affirmed.

9

¶24.   **THE JUDGMENT OF THE CHANCERY COURT OF LAMAR COUNTY IS AFFIRMED.   ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, FAIR, WILSON AND GREENLEE, JJ., CONCUR. CARLTON, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**